**[J-24-2015]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**

| | |
|---|---|
| EVONNE K. WERT, EXECUTRIX OF THE ESTATE OF ANNA E. KEPNER, DECEASED | : No. 62 MAP 2014 |
| | : |
| | : Appeal from the Order of the Superior |
| | : Court at No. 1746 MDA 2012 dated |
| | : December 19, 2013 Affirming the order of |
| v. | : the Cumberland County Court of Common |
| | : Pleas, Civil Division, at No. 12-165 CIVIL |
| | : dated September 13, 2012. |
| MANORCARE OF CARLISLE PA, LLC | : |
| D/B/A MANORCARE HEALTH | : ARGUED:   April 7, 2015 |
| SERVICES-CARLISLE; HCR | : |
| MANORCARE, INC; MANOR CARE, | : |
| INC.; HCR HEALTHCARE, LLC; HCR II | : |
| HEALTHCARE, LLC; HCR III | : |
| HEALTCARE, LLC; HCR IV | : |
| HEALTHCARE, LLC: GGNSC | : |
| GETTYSBURG, LP, D/B/A GOLDEN | : |
| LIVING CENTER-GETTYSBURG; | : |
| GGNSC GETTYSBURG GP, LLC; | : |
| GGNSC HOLDINGS, LLC; GOLDEN | : |
| GATE NATIONAL SENIOR CARE, LLC; | : |
| GGNSC EQUITY HOLDINGS, LLC; | : |
| GGNSC ADMINISTRATIVE SERVICES, | : |
| LLC | : |
| | : |
| | : |
| APPEAL OF: GGNSC GETTYSBURG LP, | : |
| D/B/A GOLDEN LIVING CENTER - | : |
| GETTYSBURG; GGNSC GETTYSBURG | : |
| GP, LLC; GGNSC HOLDINGS, LLC; | : |
| GOLDEN GATE NATIONAL SENIOR | : |
| CARE, LLC; GGNSC EQUITY | : |
| HOLDINGS, LLC AND GGNSC | : |
| ADMINISTRATIVE SERVICES, LLC | : |

**MR. JUSTICE STEVENS**                    **DECIDED:    October 27, 2015**

Golden Living Center - Gettysburg et al. ("Appellants") appeal the Superior Court's decision affirming, in relevant part, the trial court's order overruling Appellants' preliminary objections seeking to compel arbitration and reserving for trial the underlying negligence action filed by Evonne K. Wert ("Appellee"), daughter of Anna E. Kepner ("Decedent") and executrix of Decedent's estate.   For the following reasons, we affirm the order of the Superior Court and remand to the trial court for further proceedings consistent with this decision.

The following issues of first impression have been presented before this Court:

(a)     Whether the Superior Court's decision in Stewart v. GGNSC-Canonsburg, L.P., 9 A.3d 215 (Pa. Super. 2010), holding that the NAF Designation voided an identical Arbitration Agreement, was incorrectly decided and should be reversed, where there is no evidence indicating that the NAF designation was integral to the Agreement?

(b)     Whether the Court may ignore undisputed testimonial evidence that the party seeking to void the Agreement did not consider the NAF Designation to be an "integral part" of the Arbitration Agreement (because she did not bother to read the agreement)?

Wert v. ManorCare of Carlisle PA, LLC, 95 A.3d 268, 268-69 (Pa. 2014) (per curiam order) (footnote omitted).

## I.   Background

Decedent resided in Appellants' long-term skilled nursing care facility between March and August, 2010.  Due to the alleged abuse and neglect inflicted upon her throughout her stay, Decedent suffered a multitude of injuries and illnesses that eventually resulted in her death.  Appellee filed suit claiming Appellants knowingly sacrificed the quality of care given to their residents.  Relevant to this appeal,

Appellants filed preliminary objections seeking to enforce an arbitration agreement ("Agreement") which Appellee signed, along with general admission paperwork upon Decedent's admission to the facility.[1]  Relying on Stewart v. GGNSC-Canonsburg, L.P., 9 A.3d 215 (Pa. Super. 2010), on September 13, 2012, the trial court overruled the preliminary objections and found the Agreement unenforceable because the Agreement relied, as part of an essential term, upon the National Arbitration Forum ("NAF") Code procedures that were void at that time with respect to consumer arbitration disputes. See id. at 217 (declining to enforce a nursing home's identical agreement because "the NAF[ ] can no longer accept arbitration cases pursuant to a consent decree it entered with the Attorney General of Minnesota" and the term was non-severable).  Appellants appealed, claiming Stewart was either wrongly decided or, in the alternative, was

---

[1] The Agreement reads, in relevant part:

> [A]ny and all claims, disputes, and controversies . . . shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure, which is hereby incorporated into this Agreement[ ], and not by a lawsuit or resort to court process.  This agreement shall be governed [by] and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16.
>
> . . . .
>
> In the event a court having jurisdiction finds any portion of this agreement unenforceable, that portion shall not be effective and the remainder of the agreement shall remain effective.
>
> . . . .
>
> **THE PARTIES UNDERSTAND AND AGREE THAT THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES, AND THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THE PARTIES ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES.**

R. 348a-49a (emphasis in original).

distinguishable because the NAF provision was not integral to the Agreement at issue herein.

The Superior Court affirmed in an unpublished memorandum opinion on December 19, 2013. See Wert v. ManorCare of Carlisle, 93 A.3d 514 (Pa. Super. filed Dec. 19, 2013) (unpublished memorandum). Finding itself bound by Stewart, the Superior Court declined to distinguish the NAF provision as non-integral based upon Appellee's deposition testimony that the NAF provision had nothing to do with her decision to sign the Agreement. Instead, the Superior Court found Appellee's statements showed that she did not consider the importance of the NAF provision. See Wert, supra (unpublished memorandum at 6-7) ("[Appellee]'s testimony does not demonstrate she considered and then rejected the import of the NAF provisions. Rather, read in context, [Appellee]'s testimony was that she believed it was necessary to sign all the documents presented to her in order to obtain treatment and care for her mother.").[2]

Judge Fitzgerald filed a concurring statement, wherein he noted that while he agreed the Superior Court was bound by Stewart, he was "troubled" by the implication that adopting NAF procedure indicated "only [the] NAF could administer the arbitration, where the document itself does not identify who shall administer the arbitration." Wert, supra (Fitzgerald, J., concurring at 2).

Appellants filed a timely petition for allowance of appeal, and on June 24, 2014, we granted allocatur to address the issues as stated supra. The Pennsylvania

---

[2] Appellee stated that she did not read the Agreement because, "[m]y emotions weren't where they should be at that point, and . . . there was no other way to do it. I had to sign the papers to get her there so, . . . it didn't matter what I was signing. I just wanted her better." Wert, supra (unpublished memorandum at 6).

Association for Justice ("PAJ"), American Association for Justice ("AAJ"), and American Association for Retired Persons ("AARP") filed <u>amicus</u> briefs on behalf of Appellee.[3]

## II.  Discussion

### A.  Arguments of the Parties

#### 1.  Appellants

Appellants argue that the NAF provision is an ancillary and severable code of procedure based upon the plain text of the Agreement, terms and policy guidelines of the Federal Arbitration Act ("FAA"), and admissions of Appellee.  Appellants emphasize that the Agreement's scope broadly favors arbitration, wherein the NAF cannot have been integral because it is "mentioned only once."  Appellants' Brief at 26.  Appellants claim that "[w]hat the Agreement's language does reflect is that its primary and overriding purpose is that disputes be arbitrated, period."  <u>Id.</u> at 27 (citing <u>Meskill v. GGNSC Stillwater Greeley LLC</u>, 862 F. Supp. 2d 966, 975-76 (D. Minn. 2012) (permitting the appointment of a substitute arbitrator under the FAA pursuant to a similar agreement)).

Appellants contend while the Agreement selects a set of procedural rules, it lacks "an express statement designating a specific arbitrator."  <u>Id.</u> at 34.  Appellants note that although the Superior Court in <u>Stewart</u> found, as fundamental terms, "(1) that the law governing the arbitration proceedings would be the NAF code, and (2) . . . under the NAF Code, the arbitrators would be members of the NAF," subsequent decisions in other jurisdictions indicate this is incorrect.  <u>Id.</u> (quoting <u>Stewart</u>, 9 A.3d at 220).  Appellants therefore argue that merely agreeing to a forum's code of procedure does not make the

---

[3] Arguments of <u>Amici</u> will be discussed to the extent they are non-duplicative of the parties' arguments and relevant to the issues on which this Court granted allocatur. <u>See</u> <u>Holt v. 2011 Legislative Reapportionment Com'n</u>, 67 A.3d 1211, 1225 n.12 (Pa. 2013) (holding <u>amicus</u> briefs raising issues not implicated by the parties warrant no consideration).

participation of the forum itself essential. Id. (citing Green v. U.S. Cash Advance Illinois, LLC, 724 F.3d 787, 789 (7th Cir. 2013) (finding "the [arbitration] agreement calls for use of the [NAF's] Code of Procedure, not for the [NAF] itself to conduct the proceedings")).

Appellants assert the Stewart court altered the Code's specification in Rule 1(A) that it "shall be administered solely by the NAF" into a provision that "only [the] NAF was 'authorized to administ[er] *and apply* the NAF Code.'" Id. at 35 (emphasis in original). Appellants assert that the NAF Code "provides at the very beginning that the parties are always free to agree to other procedures beyond those contained [here]" and simply directs the parties to "select an arbitrator or panel of arbitrators 'on mutually agreeable terms.'" Appellants' Reply Brief at 13 (citing NAF Code Rule 21(A)(1)). Appellants argue that these rules can be administered by any competent arbitrator and that their exclusivity provision is "unenforceable in light of the [NAF's] decision to cease conducting arbitrations." Id. at 16 (quotation and internal quotation marks omitted).

Appellants claim Appellee distorts and misapplies other NAF Code Rules. For example, Appellants maintain that contrary to Appellee's claim that Rule 48(E) governs unavailability, it "merely allows [the] NAF to turn down arbitrations not properly before that body . . . . [and] goes on to say that if the parties are 'denied the opportunity to arbitrate a dispute, controversy or Claim before the [NAF], the Parties may seek legal and other remedies in accord with applicable law.'" Id. at 17. Appellants also dispute the ensuing implication that arbitration is no longer an option, noting that in Green, the Seventh Circuit Court of Appeals found that Section five of the FAA fits within the Code's definition of "applicable law." Id. at 18 (citation omitted).

Appellants accordingly favor the South Dakota Supreme Court's interpretation of the NAF Code in an analogous case, where it explicitly rejected Stewart and found the

agreement neither selected a particular adjudicator, specified qualifications or experience, nor chose the NAF as its place of forum. Wright v. GGNSC Holdings LLC, 808 N.W.2d 114, 119-20 & n.6 (S.D. 2011). Appellants emphasize that "the NAF[ ] . . . does not employ its own arbitrators and merely provides a code of procedure to be followed by neutral arbitrators who may also provide arbitration for numerous other forums." Appellants' Brief at 36.

Appellants also underscore the Agreement's severability clause, which "indicates that the intention was not to make the [NAF] integral, [but] rather only to have a dispute resolution process through arbitration." Appellants' Reply Brief at 3 (quoting Jones v. GGNSC Pierre LLC, 684 F. Supp. 2d 1161, 1167 (D.S.D. 2010)). Appellants claim that by denying the "strong evidence that the overriding intent of the parties . . . was to have covered disputes arbitrated, . . . and that the identity of the arbitral forum, administrator and rules of application are secondary concerns[,]" Appellee reduces the severability clause into mere surplusage. Id. at 3 (citations omitted). See Lesko v. Frankford Hospital-Bucks County, 15 A.3d 337, 342 (Pa. 2011) (stating courts "will not interpret one provision of a contract in a manner which results in another portion being annulled") (quotation and quotation marks omitted)).

Appellants also claim that Section five of the FAA, which is incorporated into the Agreement, should have been invoked to appoint a replacement arbitrator.[4] Appellants

---

[4] Section five states, in relevant part, that:
> [I]f for any [ ] reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein . . . .

9 U.S.C. § 5.

assert that a court should only decline to appoint a substitute arbitrator and cancel the entire agreement if the choice of forum is "'so central to the arbitration agreement that the unavailability of that arbitrator [brings] the agreement to an end[,] . . . [in which case] the parties must have unambiguously expressed their intent not to arbitrate [their disputes] in the event that the designated [arbitral] forum is unavailable.'" Appellants' Brief at 39 (emphasis omitted) (quoting Khan v. Dell, Inc., 669 F.3d 350, 354 (3d Cir. 2012) (quotation marks and citations omitted)).[5] Appellants note that Section five has even "been used to supply particulars to an arbitration agreement where none are present." Appellants' Reply Brief at 11 (citation omitted).

Appellants further maintain the FAA "embodies an emphatic federal policy in favor of arbitral dispute resolution" that courts have consistently supported. Appellants' Brief at 40 (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 131 S. Ct. 1740, 1745 (2011) (noting the FAA's "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary") (citation omitted)). See Southland Corp. v. Keating, 465 U.S. 1, 16, 104 S. Ct. 852, 861 (1984) (stating the FAA is "intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements") (footnote omitted)). Appellants argue that Pennsylvania policy favors the underpinnings of the FAA as well. Appellants' Brief at 41 (citing Salley v. Option One Mortgage Corp., 925 A.2d 115, 118-19 (Pa. 2007) (acknowledging the FAA's "relevance" in arbitration agreements)). Appellants therefore claim that Stewart "runs afoul" of the Supremacy Clause by failing to "address the unique significance of the FAA." Id. In addition, Appellants stress that in Marmet Health Care

---

[5] Appellants note that the Stewart court relied on language contained in Khan v. Dell, Inc., 2010 WL 3283529 (D.N.J. Aug. 18, 2010), that was reversed by the Third Circuit Court of Appeals "and held that the unavailability of the NAF did not warrant invalidating the arbitration agreement." Appellants' Brief at 44 (citing Khan, 669 F.3d at 356-57).

Center, Inc. v. Brown, ___ U.S. ___, 132 S. Ct. 1201 (2012), the U.S. Supreme Court rebuked the West Virginia Supreme Court for finding that the FAA did not override state public policy against binding arbitration agreements pursuant to personal injury and wrongful death suits and ordered that court, on remand, to "consider whether, absent that general public policy, the arbitration clauses . . . are unenforceable under state common law principles that are not specific to arbitration and pre-empted by the FAA." Marmet, ___ U.S. at ___, 132 S. Ct. at 1204. Accordingly, Appellants claim that under the guise of "public policy concerns," Appellee "seeks to carve out a general 'nursing home' exception to the enforceability of arbitration agreements . . . ." Appellants' Brief at 43.

Finally, Appellants maintain that Appellee's admissions "unequivocally demonstrate[ ]" that the NAF provision was non-integral to the Agreement. Id. at 22. Appellants highlight that Appellee testified that she did not read the Agreement, much less understand and form an opinion on its NAF provision. In addition, Appellants remark that in Jones, the court found a similar provision enforceable because the plaintiff signed the agreement on her mother's behalf without reviewing or negotiating its terms. Id. at 24 (citing Jones, 684 F. Supp. 2d at 1168; Meskill, 862 F. Supp. 2d at 975 (noting the lack of evidence that "the 'exclusive' designation of the NAF was an important consideration to . . . [the plaintiff]" and that the record did not indicate "[the plaintiff] was even aware of the NAF (or its Code) when he signed the Arbitration Agreement")). Appellants fault the Superior Court for "excus[ing Appellee's] failure to read the Agreement due to the fact that she (mistakenly) believed that she was required to sign . . . ." Id. Appellants claim this "twists" the burden of persuasion and would allow "any person who signs an otherwise valid arbitration agreement [to] later claim that a disputed provision is integral by simply testifying that he/she did not read it. . . ." Id. at 25-26

(citing Standard Venetian Blind Co. v. American Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983) (stating that barring fraud, failure to read a contract "is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract") (internal quotations omitted)). Appellants add that this violates the U.S. Supreme Court's mandate that courts interpret arbitration agreements "on an equal footing with other contracts[.]" Id. at 18 (quotation omitted).

Anticipating Appellee's counterargument that her testimony is inadmissible because the Agreement is unambiguous, Appellants assert that parol evidence is only forbidden "to explain or vary the terms of the contract." Id. at 28 (quoting Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 437 (Pa. 2004) (quotation marks omitted)). Rather, Appellants offer the testimony "for the purpose of demonstrating that even if a NAF arbitrator *were* required then the Agreement may still be enforced because that term was not 'integral' to either party." Id. at 29-30 (emphasis in original) (citation omitted).

Appellants maintain there are other "compelling reasons" for admission of the testimony because the Agreement does not specify which terms are integral and is ambiguous regarding whether the parties intended to adjudicate disputes exclusively before an NAF arbitrator. Id. at 31-32 (citing Metzger v. Clifford Realty Corp., 476 A.2d 1, 5 (Pa. Super. 1984) (stating that "[w]here the language of the written contract is ambiguous, extrinsic or parol evidence may be considered to determine the intent of the parties"); Bickley v. Bickley, 447 A.2d 1025, 1029 (Pa. Super. 1982) (noting that "where a document is silent on a particular subject, it may be proved by parol evidence of what took place at the time of execution")). Appellants also argue that Appellee waived any claim that her testimony is inadmissible by not objecting to its introduction and add that she has opened the door to its use since "her failure to read the Agreement is the

primary basis upon which the Superior Court has found the terms . . . to be integral."

Id. at 33 (citation omitted).   See Pellegrene v. Luther, 169 A.2d 298, 300 (Pa. 1961)

(failure to object to the introduction of parol evidence results in waiver)).

## 2. Appellee

Appellee counters that the Superior Court's decisions in Stewart and herein were

correctly decided because the NAF provisions "are clearly essential" to the Agreement

since, by its own terms, only the NAF can administer its rules and procedures.

Appellee's Brief at 18.   Appellee also claims the FAA cannot rescue the Agreement

because its "lapse" provision triggers only when the arbitrator is unavailable, not the

forum.   Appellee further asserts that even if it were admissible, her deposition testimony

has no probative value in relation to a contractual ambiguity.

After reiterating the Superior Court's reasoning in Stewart, Appellee remarks that

its holding "'is supported by a majority of decisions that have analyzed language similar

to that in the Agreement.'"   Id. at 24 (quotation, quotation marks, and footnote

omitted).[6,7]   Appellee highlights that in Stewart the Superior Court rejected decisions of

---

[6] Appellee also claims that because the Agreement was signed eight months after the NAF stopped accepting cases pursuant to the consent decree, the contract is premised on a mistake of fact and is therefore voidable.   Appellee's Brief at 31.   Appellants counter that this argument is waived because "mistake of fact is an affirmative defense that must be pled with particularity, which was not done when Appellee initially opposed the preliminary objections seeking to compel arbitration."   Appellants' Reply Brief at 8 (citing Book Metals Corp. v. Sitkin Smelting & Refining, Inc., 385 A.2d 504, 505-06 (Pa. Super. 1978)).   Appellee correctly notes that "[t]his Court may affirm on any valid basis and is not limited to grounds raised by the parties."   Appellee's Brief at 1.   See, e.g., Alderwoods (Pennsylvania), Inc. v. Duquesne Light Co., 106 A.3d 27, 41 n.15 (Pa. 2014) (stating "an appellate court may *affirm* for any reason appearing as of record") (citation omitted) (emphasis in original)).   However, neither the issues before this Court nor the Stewart decision is premised upon mistake of fact which is a separate concern that has been briefed and argued by the parties in cursory fashion.   Since we affirm the order of the Superior Court on adequate and independent bases, this issue needs no further review.

jurisdictions that reached divergent conclusions including the South Dakota federal district court in <u>Jones</u>, which the <u>Stewart</u> court characterized as "'plac[ing] undue focus on extrinsic and/or collateral evidence of the parties' intent.'" <u>Id.</u> (quoting <u>Stewart</u>, 9 A.3d at 221). Appellee notes that the <u>Stewart</u> court also criticized the <u>Jones</u> court for "'violat[ing] cardinal contract principles by failing to view the plain language of the Agreement as the principle evidence of the parties' intent . . . .'" <u>Id.</u> (quoting <u>Stewart</u>, 9 A.3d at 220). Appellee emphasizes that Appellants cite to similar "cherry-picked cases from outside jurisdictions" that are incompatible with the Pennsylvania parol evidence rule. <u>Id.</u> at 25. Based on the <u>Stewart</u> court's findings, Appellee argues that the severability clause is irrelevant since "the NAF Code specifically allows the parties to pursue their 'legal remedies' in court." <u>Id.</u> at 27 (citing <u>Miller v. GGNSC Atlanta, LLC</u>, 746 S.E.2d 680, 687 (Ga. Ct. App. 2013) (finding in an analogous case that "if the NAF is unavailable, the parties are free to seek legal remedies--<u>i.e.</u>, to file a traditional lawsuit")).

Appellee adds that beyond "espousing the FAA's policy in favor of arbitration," Appellants fail to show why the FAA warrants reversal. <u>Id.</u> at 43. Appellee asserts

---

(…continued)

[7] The PAJ emphasizes that most courts have deemed Appellants' Agreement unenforceable due to the unavailability of the NAF and its Code of Procedure. PAJ's Brief at 23 (citing <u>Licata v. GGNSC Maiden Dexter, LLC</u>, 29 Mass. L. Rep. 467, 2012 WL 1414881, at *8 (Mass. Super. 2012) (finding the NAF integral based on "the emphatic language identifying [the] NAF and incorporating the NAF Code of Procedure," its "very specific set of rules and procedures," and mandate that "arbitrators must be members of [the] NAF and are the only people authorized to administer the Code"), <u>affirmed as to other grounds</u>, 2 N.E.3d 840 (Mass. 2014); <u>GGNSC Tylertown, LLC v. Dillon</u>, 87 So.3d 1063, 1066 (Miss. Ct. App. 2011) (finding "the forum in the agreement . . . is no longer available and we decline to order the lower court to pick a forum not anticipated by either party") (internal quotations and citations omitted); <u>Geneva-Roth, Capital, Inc. v. Edwards</u>, 956 N.E.2d 1195, 1203 (Ind. App. 2011) (finding that "by drafting the agreement and presenting the non-negotiable terms to [the other party], [the drafter] demonstrated that it wanted to ensure that only the NAF would administer any arbitration that arose under the agreement"), <u>cert. denied</u>, 133 S. Ct. 650 (2012)).

that despite Appellants' claims to the contrary, they seek to give arbitration agreements greater deference than ordinary contracts. Id. at 43-44 (citing Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 404 n.12, 87 S. Ct. 1801, 1806 n.12 (1967) (noting FAA arbitration agreements are "as enforceable as other contracts, but not more so"); Salley, 925 A.2d at 118-19 (noting Congress sought to place arbitration agreements "upon the same footing as other contracts")). Appellee also argues that the reach of Section five is limited to "[the] appoint[ment of] an alternative arbitrator, not an alternative arbitration forum" and cannot supersede the terms of the Agreement. Id. at 44 (citing In re Salomon Inc. Shareholders' Derivative Litigation, 68 F.3d 554, 561 (2d Cir. 1995) (finding courts cannot "use [Section five] to circumvent the parties' designation of an exclusive arbitral forum")).[8]

Appellee declares Appellants' reliance on Marmet is misplaced, emphasizing that "the Supreme Court overturned a '***categorical rule*** prohibiting arbitration of a particular type of claim' in West Virginia." Id. at 47 (emphasis in brief) (quoting Marmet, ___ U.S. at ___, 132 S. Ct. at 1203-04). Rather, the West Virginia Supreme Court was free to determine whether "the arbitration clauses . . . are unenforceable under state common law principles that are ***not specific to arbitration*** and pre-empted by the FAA." Id. (emphasis in brief) (quoting Marmet, ___ U.S. at ___, 132 S. Ct. at 1204). Appellee

---

[8] The AAJ notes that "[i]n cases where an arbitrator has resigned or died during the course of an arbitration, federal courts have held that [S]ection [five] of the FAA authorizes the court to fill the void by appointing a substitute arbitrator." AAJ's Brief at 27 (citing WellPoint, Inc. v. John Hancock Life Ins. Co., 576 F.3d 643, 647 (7th Cir. 2009) (noting that Section five "sets forth a rule that applies to the mid-stream loss of an arbitrator")). By contrast, the AAJ underscores that Section five cannot apply where there has been a lapse in the administrator. Id. at 27-28 (citing Martinez v. Master Protection Corp., 12 Cal. Rptr. 3d 663, 675 (Cal. Ct. App. 2004) (noting under California's analogous state arbitration law that its equivalent provision "does not permit the trial court to choose an alternative forum where the chosen forum refuses to hear the case")).

therefore asserts that Marmet "**reinforces**" the Superior Court's holdings both here and in Stewart, based on "well-established 'state common law principles'" like the parol evidence rule that do not "specifically discriminate against arbitration agreements." Id. (emphasis in original).[9]

Appellee contends if this Court looks beyond the clear and unambiguous language of the Agreement, her deposition testimony cannot be used as extrinsic evidence because it lacks evidentiary value. Id. at 32. While Appellee does not contest that she signed the Agreement before reading it, she asserts that her subjective appreciation of the NAF provision is irrelevant with regard to its integrality. Appellee underscores that the contract's terms are clear and hence dictate the intent of the parties as expressly written. Id. at 32-33 (citing Steuart v. McChesney, 444 A.2d 659, 661 (Pa. 1982) (barring ambiguity, "intent is to be discovered only from the express language of the agreement")). Appellee notes that the Agreement states: "[A]ny disputes between the parties '**shall** be resolved **exclusively** through binding arbitration' conducted 'in accordance with the [NAF] Code of Procedure, which is hereby incorporated into this Agreement . . . .' In turn, the NAF's Code of Procedure provides that '**only**' the NAF may administer its Code of Procedure." Id. at 35 (emphasis in original) (citations omitted). Appellee therefore argues that the Agreement's "explicit and mandatory language" and "express incorporation of the NAF Code" evince the parties' intent to

---

[9] In Taylor v. Extendicare Health Facilities, Inc., 113 A.3d 317 (Pa. Super. 2015), the Superior Court found Marmet and the FAA did not preempt a state law requiring the consolidation of wrongful death and survival claims. The Superior Court therefore declined to bifurcate the plaintiff's claims against the defendant nursing care facility and compel arbitration with respect to the survival claim, which the arbitration agreement covered, based on the identical issues and the potential for inconsistent liability and duplicative damage determinations. Id. at 327. The Superior Court remarked that unlike in Marmet, "[t]he statute and rule at issue are not 'aimed at destroying arbitration' and do not demand 'procedures incompatible with arbitration.'" Id. at 327-28 (quoting Concepcion, 563 U.S. at ___, 131 S. Ct. at 1747-48).

arbitrate only before the NAF, making it integral regardless of the lack of express statement to that effect.  Id. at 35.

Conceding that no Pennsylvania court has explicitly addressed the issue, Appellee notes that many other jurisdictions have found a party's failure to read a contract does not negate the integrality of specific terms.  Id. at 34 (citing Miller v. Lykes Bros. S.S. Co., Inc., 467 F.2d 464, 466 (5th Cir. 1972) (finding a contractual provision integral regardless of the appellants' failure to read the overarching agreement)). Appellee argues that finding otherwise would "carve out a new exception to the [p]arol [e]vidence [r]ule whereby a party claiming that a contractual term is integral must first produce extrinsic evidence of the subjective importance placed on the disputed term -- notwithstanding the non-ambiguity of the *actual written term*."  Id. at 37-38 (emphasis in original).  See Pace Communications, Inc. v. Moonlight Design, Inc., 31 F.3d 587, 592 (7th Cir. 1994) (finding a rule "requir[ing] that parties discuss a contract's every term in order to be bound by it . . . would reward parties for their failure to read what they sign[.]").

Appellee further asserts that if this Court finds the Agreement unclear, her testimony still cannot be admitted under the parol evidence rule because Appellants' claim of ambiguity relates only to whether the parties agreed to arbitrate exclusively before the NAF.  Appellee emphasizes that "[she] cannot say that she placed importance on *any* term in the agreement."  Appellee's Brief at 41 (emphasis in original).  Appellee therefore accuses Appellants of trying to "have it both ways" by "attempt[ing] to use [Appellee]'s statement that she did not read the Agreement to establish that the NAF designation is non-integral" while simultaneously "maintain[ing] that these same contractual terms demonstrate that [Appellee] clearly intended to

arbitrate pursuant to the FAA." Id. at 42.[10] Instead, Appellee asserts that the contract should be construed against the drafter. Id. at 33 n.28 (citing Bucks Orthopaedic Surgery Associates, P.C. v. Ruth, 925 A.2d 868, 872 (Pa. Super. 2007) (stating "[a]rbitration agreements are contracts and should be interpreted using contract principles . . . . [W]here an ambiguity exists, courts are free to construe the ambiguity against the drafter")).[11]

### B. Standard of Review and Relevant Law

Issues of contractual interpretation are questions of law. Accordingly, this Court's standard of review is de novo and its scope is plenary. McMullen v. Kutz, 985

---

[10] Responding to Appellants' claim that she "waived" the invocation of the parol evidence rule by using her testimony regarding other aspects in the case that are not currently before this Court, Appellee argues "if [ ] extrinsic evidence is admitted over objection or without objection, the question still remains for decision by the court whether . . . [the] extrinsic [evidence] . . . can in law be effective to add to, subtract from or vary the terms of the writing." Appellee's Brief at 41 n.33 (quoting 32A C.J.S. Evidence § 1406). As implied infra, we find the issue of waiver irrelevant based on the testimony's lack of probative value.

[11] The AARP offers additional policy rationales for construing the Agreement against Appellants. Describing the nursing care facility admission process as "an 'emotionally-charged, stress-laden event,'" the AARP focuses on the "grossly superior bargaining power, knowledge, and control" such facilities have over the formation of arbitration agreements. AARP's Brief at 11-12 (quoting Podolsky v. First Healthcare Corp., 58 Cal. Rptr. 2d 89, 101 (Cal. Ct. App. 1996)). The AARP emphasizes that these agreements are drafted with the aid of expert professionals and presented to people who "have probably never before seen a nursing facility contract, let alone read the arbitration provisions contained therein." Id. at 13 (citing S. Rep. No. 110-518, pt. I.B. (2008), available at http://gpo.gov/fdsys/pkg/CRPT-110srpt518/ html/CRPT-110srpt518.htm. Prospective residents and their families, by contrast, almost always lack the benefit of counsel to inform them they may decline to agree to pre-dispute arbitration without penalty, much less negotiate the terms of the agreement. Id. at 13-14. The AARP therefore asserts that "it is difficult for potential residents and their families, faced with the crises accompanying admission to a nursing facility, to make informed decisions about the numerous provisions contained in an admissions contract[.]" Id. at 15. As a result, "it is vitally important to ensure that agreements to arbitrate future disputes between nursing facilities and residents are enforced fairly so that residents can avail themselves of all available avenues of redress for abuse and neglect." Id. at 16.

A.2d 769, 773 (Pa. 2009). A contract shall be interpreted in accordance with the parties' intent. Lesko, 15 A.3d at 342. When a written contract is clear and unambiguous, the parties' intent is contained in the writing itself. Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 468 (Pa. 2006); Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986). A party will be bound by this writing regardless of whether he or she read and fully understood its terms. See generally Samuel-Bassett v. Kia Motors America, Inc., 34 A.3d 1, 25 (Pa. 2011). A court cannot alter these terms "under the guise of construction." Delaware County v. Delaware County Prison Employees Independent Union, 713 A.2d 1135, 1138 (Pa. 1998). Unless otherwise specified, a contract's language shall be given its plain and ordinary meaning. TruServ Corp. v. Morgan's Tool & Supply Co., 39 A.3d 253, 260 (Pa. 2012).

Parol evidence is only admissible to resolve ambiguities, though ambiguities may be "latent[ and] created by extrinsic or collateral circumstances." Adjustment Bureau v. Allstate, 905 A.2d at 468 (citing Steuart, 444 A.2d at 663). An ambiguity is present if the contract may reasonably be construed in more than one way. Kripp v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004). When examining the intentions of the parties in relation to an ambiguity, "the court must look at the circumstances under which the [contract] was made." In re Estate of Quick, 905 A.2d 471, 475 (Pa. 2006) (quotation and quotation marks omitted). Any ambiguities shall be construed against the contract drafter. Shovel Transfer and Storage, Inc. v. Pennsylvania Liquor Control Bd., 739 A.2d 133, 139 (Pa. 1999).

The severability of a contract may be apparent from its explicit language. Jacobs v. CNG Transmission Corp., 772 A.2d 445, 452 (Pa. 2001). Regardless, "[t]he courts are not generally available to rewrite agreements or make up special provisions for parties who fail to anticipate foreseeable problems." In re Estate of Hall, 535 A.2d 47,

56 n.7 (Pa. 1987). Arbitration clauses are no more or less valid, enforceable, or irrevocable than any other contractual provision. Borough of Ambridge Water Authority v. Columbia, 328 A.2d 498, 500 (Pa. 1974).

## C. Analysis

As noted supra, numerous cases involving similar agreements have been litigated across the nation. This case involves competing precedents: Appellee asks this Court to affirm Stewart and find, like the majority of our sister jurisdictions, that the NAF's participation was integral to the Agreement, which therefore cannot be salvaged by its severability clause, while Appellants urge this Court to follow the minority of jurisdictions which found arbitration was the overarching goal and need not be adjudicated by the NAF itself.

The integrality of the NAF provision hinges in significant part on the weight and admissibility of Appellee's admissions. Addressing this issue at the forefront, we note that Appellants' liberal citations to non-controlling jurisdictions notwithstanding, Pennsylvania courts have perennially held:

> [W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence. Hence, where language is clear and unambiguous, the focus of the interpretation is upon the terms of the agreement as *manifestly expressed* rather than as, perhaps, silently intended.

Lesko, 15 A.3d at 342 (quoting Steuart, 444 A.2d at 661) (emphasis in original).

Assuming, arguendo, that Appellee's testimony is admissible to address a latent ambiguity, we find her failure to read the Agreement does not implicate the importance of its NAF provision; thus, her subjective understanding of the Agreement is irrelevant to this case. Appellee is not rewarded for hastily signing the Agreement, nor do her

actions implicate the mandate that "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 91, 121 S. Ct. 513, 522 (2000) (citations omitted). Rather, we recognize that premising the integrality of a contractual term on the subjective understanding of a far less sophisticated non-drafting party is ill-advised public policy that would further distort an already lopsided balance of power. It follows, then, that a similarly situated non-drafting party could not use her failure to read as a means of disavowing an otherwise valid arbitration agreement.

Furthermore, Appellants' desired interpretation would not place arbitration agreements on equal footing with other contracts. It would instead encourage drafting parties to forego integration clauses and excuse their failure to account for foreseeable issues within the four corners of the agreement by pointing to the less sophisticated party's inability to understand its terms. See Yocca, 854 A.2d at 436 ("An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that . . . .") (citations omitted)).

The Agreement provides that arbitration shall be conducted "exclusively . . . in accordance with the [NAF] Code of Procedure, which is hereby incorporated into this Agreement[ ], . . . [and that t]his agreement shall be governed [by] and interpreted under the [FAA], 9 U.S.C. Sections 1-16." R. 348a.[12] As a result, the question of whether

---

[12] The provision stating "**THE PARTIES UNDERSTAND AND AGREE THAT THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES** . . . ." as fully quoted in n.1 supra, is not dispositive of the fact that "[t]he overriding purpose of the Agreement is to resolve disputes by arbitration and not through judicial litigation," Appellants' Brief at 9, because "in determining the intent of the contracting parties, all provisions in the agreement will be (continued…)

Appellants can compel arbitration must be answered by the relevant NAF and FAA provisions, not the subjective intent of the parties. We decline to read an ambiguity into an agreement that could easily have been addressed by Appellants within its express terms. See Steuart, 444 A.2d at 662 (noting "[t]he court may not rewrite the contract for the purpose of . . . mak[ing] for [the parties] a better contract than they chose, or saw fit, to make for themselves, . . . because it later appears that a different agreement should have been consummated in the first instance . . . .").[13]

> Turning to the NAF Code of Procedure, Rule 1(A) states:
>
> Parties who contract for or agree to arbitration provided by the Forum or this Code of Procedure agree that this Code governs their arbitration proceedings, unless the Parties agree to other procedures . . . . This Code shall be administered only by the [NAF] or by any entity or individual providing administrative services by agreement with the [NAF].

NAF Code, Rule 1(A). Although Appellants emphasize that the NAF is not required to administer and **apply** the Code, this is a distinction without a difference. Besides the fact that per the consent decree no NAF entity may "[a]dminister or process any new Consumer Arbitration," Black's Law Dictionary defines "administer" as "[t]o manage (work or money) for a business or organization." Consent Decree, State of Minnesota v. National Arbitration Forum (No. 27-CV-09-18550, Minn. Dist. Ct., July 17, 2009); BLACK'S LAW DICTIONARY 52 (10th ed. 2014). "Manage," in turn, is defined as "[t]o

---

(…continued)
construed together and each will be given effect." LJL Transp., Inc. v. Pilot Air Freight Corp., 962 A.2d 639, 647 (Pa. 2009). See also Capek v. Devito, 767 A.2d 1047, 1050 (Pa. 2001) (stating "[a]n interpretation will not be given to one part of the contract which will annul another part of it") (internal quotation marks and quotation omitted)).

[13] We acknowledge the line of precedent that states "[a] contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Hutchison, 519 A.2d at 390 (citing Metzger, 476 A.2d at 5). However, we decline to broadly apply that principle in the instant case.

conduct, control, carry on, or supervise." Id. at 1103-04. The NAF no longer does any of these things with respect to consumer arbitration disputes. In addition, the NAF Code defines an arbitrator as "[a]n individual selected in accord with the Code or an Arbitration Agreement to render Orders and Awards . . . ." NAF Code, Rule 2(F). The NAF Code also notes "[t]he National Arbitration Forum [et al.] constitute the administrative organizations conducting arbitrations under this Code." NAF Code, Rule 2(S).[14]

While the parties are free to select an arbitrator "on mutually agreeable terms," NAF Code, Rule 21(A)(1), herein they simply signed an agreement stating that ensuing legal disputes would be conducted "in accordance with the [NAF] Code of Procedure, . . . and not by a lawsuit or resort to court process." R. 348a. Both the NAF Code and the Agreement provide that "all arbitration proceedings, Hearings, Awards, and Orders are to be governed by the [FAA], 9 U.S.C. §§ 1-16," NAF Code, Rule 48(B).[15,16] However, we

_____

[14] While the definition then states the forum can include "an entity or individual providing administrative services by agreement with the [NAF that] administers arbitrations in accord with this Code," this would create an "end-run" around the consent decree with respect to consumer arbitration disputes. NAF Code, Rule 2(S).

[15] Appellants cite to Green as persuasive precedent. However, that case is unavailing for several reasons. First, the Agreement here states that arbitration "shall be resolved **exclusively** . . . in accordance with the [NAF] Code of Procedure[.]" R. 348a (emphasis added). The agreement in Green provided that "[a]ll disputes, claims or controversies between the parties . . . shall be resolved by binding arbitration by one arbitrator by and under the Code of Procedure of the [NAF]." Green, 724 F.3d at 788. Second, the Green Court based its holding, in significant part, on the premise that "Rule 1.A is 'unenforceable' in light of the Forum's decision to cease conducting arbitrations," and since "no author can control how or by whom a written work is used," a substitute arbitrator can and must be appointed under Section five of the FAA. Id. at 789-90. Finally, regardless of whether Section five can be used to interpret an arbitration clause "shorn of details," that is hardly the case here, as the Agreement specifies that disputes shall be exclusively resolved under the NAF Code. Green, 724 F.3d at 792.
We note that, in the Chicago-Kent College of Law's Seventh Circuit Review, Christine L. Milkowski makes a strong case that "the [Green] Court has zealously applied Section [two] of the FAA, which states arbitration agreements shall be 'valid, irrevocable (continued…)

are unconvinced that the generally enacted FAA was intended to vary the specific mandates of NAF procedure. Section five of the FAA states:

> If in the agreement provision be made for a method of naming or appointing an arbitrator . . . , such method shall be followed; but . . . if for any [ ] reason there shall be a lapse in the naming of an arbitrator . . . , then upon the application of either party to the controversy the court shall designate and appoint an arbitrator . . . , who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein[.]

9 U.S.C. § 5.

Pursuant to the reasoning of the Stewart court and the majority of our sister jurisdictions, we find that, post-consent decree, Section five of the FAA cannot preserve NAF-incorporated arbitration agreements unless the parties made the NAF's availability

---

(…continued)
and enforceable,' to favor arbitration over litigation." Christine L. Milkowski, Expanding the Scope of the Federal Arbitration Act: An Examination of the Seventh Circuit's Opinion in Green v. U.S. Cash Advance, Illinois, LLC, 9 SEVENTH CIRCUIT REV. 50 (2013). See http://www.kentlaw.iit.edu/Documents/Academic%20Programs/7CR/v9-1/Milkowski.pdf. In addition to criticizing Judge Easterbrook's majority opinion, Milkowski favorably cites key portions of Judge Hamilton's dissent, asserting that "[u]nlike the majority, which severed the rules of the NAF Code of Procedure that did not support its opinion, Judge Hamilton used the Rules in a common sense way to support the natural reading of the arbitration agreement." Id. at 72-73 (citing Green, 724 F.3d at 795-96 (Hamilton, J., dissenting)). To the extent Section five of the FAA may trigger the appointment of a substitute arbitrator, Milkowski notes, in relevant part, "that there was no correctable 'lapse' when the drafters of the agreement named an arbitration forum that was never available." Id. at 73 (citing Green, 724 F.3d at 797 (Hamilton, J., dissenting)).

[16] We agree with Appellants that Rules 48(E-F) are not definitively fatal to their motion to compel arbitration. Rule 48(E) states the arbitrator "**may** decline the use of arbitration for any dispute[ ] . . . that is not a proper or legal subject matter for arbitration . . . ." NAF Code, Rule 48(E) (emphasis added). While Rule 48(F) holds that "[i]n the event of a cancellation of this Code, any Party may seek legal and other remedies . . . .," NAF Code, Rule 48(F), the consent decree does not cancel the Code, but suspends it as applied to consumer arbitration disputes.

non-essential by specifically varying the terms of its procedure.[17] Regardless of whether Section five **may** apply where there is a lapse in the administrator, by its own rules, the NAF must administer its code unless the parties agree to the contrary. The parties here agreed that any disputes "shall be resolved **exclusively** by binding arbitration to be conducted . . . in accordance with the [NAF] Code of Procedure, which is hereby incorporated into this Agreement[.]" R. 348a (emphasis added). We therefore find the provision integral and non-severable. Doing otherwise would require this Court to rewrite the Agreement. Underlying FAA policy, as interpreted by the Supreme Court in Marmet, does not mandate a different result because our conclusion is based on settled Pennsylvania contract law principles that stand independent of arbitration.

### III. Conclusion

For the reasons set forth above, we decline to overturn Stewart as incorrectly decided. We, therefore, affirm the order of the Superior Court and remand to the trial court for further proceedings consistent with this decision.

Madame Justice Todd joins the lead opinion.

Mr. Chief Justice Saylor files a concurring opinion.

Mr. Justice Eakin files a dissenting opinion.

Mr. Justice Baer files a dissenting opinion.

---

[17] In addition to not being binding on this Court, Khan was reversed in a divided Third Circuit Court of Appeals opinion that applied New Jersey state law and public policy. In her dissent, Judge Sloviter found, like this Court, that "[t]he plain text of the arbitration agreement clearly states that the selection . . . of the NAF as arbitrator was integral to the agreement, . . . lead[ing her] to conclude that Section [five] of the FAA is inapplicable and the unavailability of the NAF precludes arbitration." Khan, 669 F.3d at 357 (Sloviter, J., dissenting).