J-S08013-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| BCJ MANAGEMENT, L.P. | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MAXINE THOMAS | : | No. 955 WDA 2017 |

Appeal from the Order May 31, 2017
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  LT-15-000913

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS*, P.J.E.

MEMORANDUM BY LAZARUS, J.:       FILED MARCH 26, 2018

BCJ Management, L.P. ("BCJ") appeals from the May 31, 2017 order, entered in the Court of Common Pleas of Allegheny County, entering judgment in favor of Maxine Thomas ("Thomas") following denial of BCJ's motion for post-trial relief.  After our review, we affirm.

BCJ, which manages the Oak Hill Apartments ("Oak Hill"), commenced an action in eviction against Maxine Thomas ("Thomas"), a tenant, alleging she had violated and breached conditions of the parties' Lease Agreement. Judgment was entered in favor of BCJ by Magisterial District Judge Eugene Ricciardi.  Thomas filed an appeal from that judgment on September 8, 2015, and, thereafter, BCJ filed a complaint alleging Thomas had violated various

_____

*   Former Justice specially assigned to the Superior Court.

provisions of the Lease Agreement, in particular paragraphs 9(C),[1] 9(K),[2] 9(L),[3] and 9(N).[4]   Thomas filed an answer, new matter and counterclaim, and BCJ filed a reply to the new matter and counterclaim.

_____

[1] Paragraph 9(C) states: "Tenant agrees not to knowingly invite persons known to be on [the] BCJ Management, LP "No Trespass/Exclusion List" into the Unit."  Lease Agreement, 4/12/11.

[2]  Paragraph 9(K) states: "To assure that no "Covered Person" engages in:

> 1. Any Drug-related Criminal activity on or off the Premises or in the Unit.  The physical presence of a controlled substance, regardless of ownership, shall constitute a material breach of this Lease and provide grounds for immediate Lease termination in compliance with Federal and State law and HUD regulations.
>
> 2. Any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the Premises by members of the Household, Guests, other tenants or employees of BCJ Management, LP, or persons residing in the immediate vicinity of the Premises.
>
> 3. Conduct covered by ¶¶20A [referring to illegal drug use and criminal activity].

 Lease Agreement, 4/12/11.  "Covered Person" is defined as: "Tenant, any member of Tenant's Household, a Guest or Other Person under the Tenant's control[.]"  Id. at ¶ 2.

[3]  Paragraph 9(L) states: "To assure that no Covered Person engages in abuse or pattern of abuse of alcohol that affects the health, safety, or right to peaceful enjoyment of the Premises by other Tenants."  Lease Agreement, 4/12/11.

[4]  Paragraph 9(N) states: "To assure that no Covered Person acts in a manner which will disturb other Tenants' peaceful enjoyment of their accommodations or community facilities and further, that covered Person will act in a manner which is conducive to maintaining the Unit and/or the Premises in a decent, safe, and sanitary condition."  Lease Agreement, 4/12/11.

The case was scheduled for arbitration, and, by agreement of the parties, arbitration was continued four times. The parties ultimately negotiated a Settlement Agreement and Mutual Release ("Settlement Agreement"). On April 22, 2016, counsel for the parties executed a Consent Order, which incorporated the Settlement Agreement in its entirety.[5] The Consent Order, signed by Senior Judge R. Stanton Wettick, and the Settlement Agreement, were filed with the Allegheny County Department of Court Records.

On September 9, 2016, BCJ filed a motion for a hearing to determine whether Thomas should be found in default of the Settlement Agreement. The court held an evidentiary hearing on September 27, 2016, and, on October 19, 2016, the court entered an order determining that Thomas, who has resided at Oak Hill for 41 years, had not violated the Settlement Agreement.

_____

[5] "A consent decree is a contract which has been given judicial sanction, and, as such, it must be interpreted in accordance with the general principles governing the interpretation of all contracts." Com. ex rel. Kane v. UPMC, 129 A.3d 441, 463 (Pa. 2015) (citations omitted). In interpreting contract terms, the cardinal rule is to ascertain the intent of the contracting parties. Lesko v. Frankford Hosp.–Bucks Cnty., 15 A.3d 337, 342 (Pa. 2011). If contract terms are clear and unambiguous on their face, then such terms are deemed to be the best reflection of the parties' intent. Kripp v. Kripp, 849 A.2d 1159 (Pa. 2004). If, however, the terms are ambiguous, we may consider extrinsic evidence to ascertain their meaning. Murphy v. Duquesne Univ. of The Holy Ghost, 777 A.2d 418 (Pa. 2001). A contract's terms are considered ambiguous "' if they are subject to more than one reasonable interpretation when applied to a particular set of facts.'" UPMC, 129 A.3d at 463 (citation omitted).

BCJ filed a motion for post-trial relief on October 29, 2016, and Thomas filed a response on February 24, 2017. The trial court directed BCJ to order a transcript of the hearing and requested briefs on the post-trial motions. On May 31, 2017, the court denied BCJ's motion for post-trial relief. This appeal followed. BCJ raises the following issues for our review:

1. Whether the trial court committed an error of law and/or abused its discretion in determining that Sherman Thomas, Sr., was permitted by BCJ to enter Thomas' residence and, therefore, determining that Thomas did not breach the Settlement Agreement by allowing Sherman Thomas, Sr., to enter such residence?

2. Whether the trial court committed an error of law and/or abused its discretion by determining that Thomas did not breach the Settlement Agreement because no two reasonable minds would disagree that Thomas breached the Settlement Agreement?

3. Whether the trial court committed an error of law and/or abused its discretion by admitting testimony from Sherman Thomas, Sr. regarding the contents of the surveillance videotape and the verbal statements allegedly made by the pervious manager and previous security supervisor of BCJ?

4. Whether the trial court committed an error of law and/or abused its discretion by considering factors that were not probative of whether Thomas breached the Settlement Agreement?

5. Whether BCJ acted prudently and with justification by filing a motion for post-trial relief as opposed to filing a direct appeal within thirty (30) days from the trial court's October 18, 2016 order?[6]

_____

[6] Where a trial has taken place and timely post-trial motions have been filed, the appeal period does not begin to run until the trial court has issued a decision on the post-trial motions. Pa.R.C.P. 227.1. "A motion for post-trial

Appellant's Brief, at 3.

> Our review in a nonjury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the nonjury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

Hollock v. Erie Insurance Exchange, 842 A.2d 409, 413–14 (Pa. Super. 2004) (en banc) (citations and quotations omitted). Our review of contract interpretation issues is plenary. Wertz v. Manorcare of Carlisle PA, LLC, 124 A.3d 1248 (Pa. 2015).

Pursuant to the Settlement Agreement, Thomas' son, Sherman Thomas, Sr., ("Sherman") was placed on a No Trespass/Exclusion List ("the List"). Although not specified in the Settlement Agreement, Tasha Kyte was also placed on the List. The evidence presented at the hearing established that

_____

relief may be filed following a trial by jury or a trial by a judge without a jury pursuant to Rule 1039." Pa.R.C.P. 227.1(c). Here, the court held an "evidentiary hearing," where counsel made opening and closing statements, the parties presented evidence in the form of witness testimony and documents, and the court resolved factual issues and entered an order accordingly. We note, too, that the transcript of proceedings is captioned as a "non-jury trial" on the title page. See N.T., Non-Jury Trial, 9/27/16, at 1. We conclude, therefore, that post-trial motions were properly filed in this matter and the appeal is properly before us.

Thomas was aware that Kyte had been added to the List, but it was not established that Kyte was aware she was on the List; Kyte had not received notice because BCJ did not have an address for her.

On August 23, 2016, Kyte went to Thomas' apartment to retrieve her children; Kyte's mother, Thomas' neighbor, had been watching Kyte's children but brought them to Thomas' apartment because she was called in to work. Kyte, unaware that she was on the List, went to Thomas' apartment to retrieve her children. When she arrived, Thomas, who was expecting Kyte's mother to pick up the children, told her she was not supposed to be there. As Kyte was leaving, she was stopped by Oak Hill security guards, who notified the Pittsburgh Police Department.

On August 25, 2016, Sherman and his two children started to go on the Oak Hill property. Oak Hill management called Pittsburgh Police and filed a report, but no arrests were made. At the hearing, Thomas and Sherman both testified that Sherman was permitted on the property for the limited purpose of dropping off and picking up his children. BCJ did not present any evidence to refute this.

Paragraph 12 of the Settlement Agreement provides that Thomas "will not knowingly invite, permit, allow and/or enable any person(s) on the No Trespass/Exclusion List to enter, visit, reside and/or otherwise be present in the Subject Unit and/or any such other residential dwelling unit that Thomas and her household may occupy in the future." Settlement Agreement, 4/21/16, at 5, ¶ 2 (emphasis added).

After reviewing the record of the evidentiary hearing and the parties' arguments on appeal, we find BCJ's first two claims meritless. We agree with the trial court's determination that the evidence did not establish that Thomas was in breach of the parties' Lease Agreement. BCJ did not establish that Sherman was on the Oak Hill property in violation of the parties' Settlement Agreement or that Thomas had knowingly invited, permitted, allowed or enabled Kyte into her apartment. Breach of the Settlement Agreement hinges on Thomas' invitation, knowledge, permission or enabling, which BCJ did not establish at the evidentiary hearing.

Next, BCJ claims the court erred and abused its discretion by permitting Sherman to testify about what he observed when he viewed BCJ's security video. Essentially, the court sustained BCJ's objection with respect to Sherman's testimony about the photographs taken of the video because the video was not in evidence, see N.T. Non-Jury Trial, 9/27/16, at 54-55, but the court allowed Sherman to testify as to what he observed on the video at his meeting with security. Id. at 55. Sherman's testimony as to what he observed was admissible, and was subject to cross-examination. Further, BCJ questioned John Rowan, BCJ's senior property manager, about the meeting he had had with Thomas and Sherman on August 26, 2016, the day after Sherman dropped his children off. Rowan testified that Thomas and Sherman came to see him about why Sherman was on the List, and Sherman requested he be removed from the List. Id. at 40-41. On cross-examination, Rowan was questioned about the video, and he acknowledged that he reviewed the

video with Thomas and Sherman. Id. at 43-44. No objection was made. BCJ effectively "opened the door" to questioning about the meeting and the video, and therefore cannot complain on appeal. Sweener v. First Baptist Church, 533 A.2d 998 (1987) (appellant cannot complain about introduction of evidence when basis therefor is revealed on cross-examination).

In its fourth issue, BCJ argues that the court erred and abused its discretion in "considering evidence that was irrelevant and/or not probative as to whether Thomas actually breached and violated the Settlement Agreement." Appellant's Brief, at 38. BCJ states that the court should not have considered: (1) the fact that no police report was filed regarding Kyte's presence at Thomas' home; (2) the fact that no arrests were made when Sherman entered the Oak Hill property to drop off his children; (3) the fact that the individual Oak Hill security identified as Sherman turned out to be a man named Joseph Clancey; (4) the fact that Thomas and Sherman "believe" that BCJ wants to remove Thomas from her home; (5) the fact that Sherman believed he had limited permission to enter Oak Hill for the purpose of dropping his children off at Thomas' home; and (6) the lack of rebuttal testimony to Sherman's statement that he had limited permission to enter Oak Hill.

> The basic requisite for the admission of any evidence is that it be both competent and relevant. Evidence is "competent" if it is material to the issues to be determined at trial, and "relevant" if it tends to prove or disprove a material fact in issue. The question of whether evidence is relevant and, therefore, admissible, is a determination that rests within the sound discretion of the trial court and will not be reversed on appeal absent a showing that

the court clearly abused its discretion. It is the court's function to exclude any evidence which would divert attention from the primary issues in the case, . . . thus the trial judge has broad discretion regarding the admissibility of potentially misleading or confusing evidence.

Turney Media Fuel, Inc. v. Toll Brothers, Inc., 725 A.2d 836, 839 (Pa. Super. 1999).

A review of the trial transcript reveals that the court was of the opinion that in the context of this non-jury proceeding, it should receive all of the available competent evidence and then make a determination as to the weight it would accord that evidence in deciding the ultimate issue of breach. The court's determination that the challenged evidence was of consequence in determining the issue of breach, and thus relevant, was not an abuse of discretion. See Pa.R.E. 401; Moran v. G. & W.H. Corson, Inc., 586 A.2d 416, 428 (Pa. Super. 1991) (evidence is relevant, and therefore admissible, if it "logically or reasonably tends to prove or disprove a material fact in issue, tends to make such a fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact."); see also Commonwealth v. Kearney, 92 A.3d 51, 61 (Pa. Super. 2014) (stating that "[e]ven if prejudicial information was considered by the trial court, a judge, as fact finder, is presumed to disregard inadmissible evidence and consider only competent evidence.")(citation omitted). Moreover, "the breadth of admissibility of relevant evidence under Pa.R.E. 401 also extends to facts not in dispute." See Ohlbaum on the Pennsylvania Rules of Evidence, § 401.05 (2016 ed.).

Additionally, the failure to rebut Sherman's testimony regarding his limited access permission is certainly relevant to the issue of breach, as well as to the weight and credibility of that testimony. The court, as it acknowledged, can accept that testimony and the lack of rebuttal as an inference unfavorable to BCJ.[7]  We find no clear abuse of discretion. Turney, supra.

BCJ's final issue is disposed of in footnote 6, supra.

We conclude, therefore, that the court's decision that Thomas did not breach the Lease Agreement is supported by the record.  Judgment in Thomas' favor was proper.  Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/26/2018

_____

[7] We note, too, that BCJ has not indicated where in the record it objected to the testimony regarding limited permission, lack of arrests or lack of police reports.  See Pa.R.A.P. 2117(c).