IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Antoine Gardiner, Bizness                  :
as Usual Inc., Biz as Usual LLC,           :
and King Kole Cafe Inc.,                    :  No.  382 C.D. 2022
           Appellants                 :
        v.                           :  Submitted: November 6, 2023
                                     :
City of Philadelphia                        :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH               FILED: December 4, 2023

       Appellants Antoine Gardiner (Gardiner), Bizness as Usual Inc., Biz as Usual LLC, and King Kole Cafe, Inc. (Corporate entities) (collectively, Landowners) appeal from the April 5, 2022 judgment entered by the Court of Common Pleas of Philadelphia County (trial court) in favor of Appellee City of Philadelphia (City) on Landowners' claims for declaratory and injunctive relief. Landowners argue on appeal that the trial court erred in concluding that Landowners materially breached a settlement agreement (Agreement) that they executed with the City to secure substantially reduced tax and municipal liabilities. After careful review, we affirm.

## I.    FACTS AND PROCEDURAL HISTORY

       The trial court cogently summarized the material facts of this case, which we restate, in pertinent part, as follows:

> This matter arises from [the] [Agreement] entered into by [Landowners] with the [City] on August 14, 2019[,] to resolve [Landowners'] outstanding real estate taxes, water bills, [business income and receipts tax (BIRT)] delinquencies, [u]se and [o]ccupancy tax delinquencies, [ ] [judgments] taken by [the City's Department of Licenses and Inspections

(L&I)], and various penalties assessed pursuant to the Philadelphia Code [(Phila. Code)].[1] The combined liabilities owed by [Landowners] to the City totaled $2,298,669[.00].[ ] [ ] [Landowners] have owned some [65] properties throughout [the City] for the past [30] years. In March[ ] 2019, [ ] Gardiner and representatives of the City['s] [Department of Revenue] met to reach a resolution to collect the delinquent balances owed by [Landowners]. As a result of that meeting, the parties entered into the [ ] Agreement. The City agreed to significantly discount the amount owed [(Total Liabilities)] to $1,650,000[.00,] in exchange for [Landowners'] agreement to make installment payments to be completed by July 1, 2021[,] without the need for further litigation to collect the arrearages.

The [pertinent] terms [of the Agreement] are set forth in paragraph K [of the Agreement] [and read] as follows:

[ ] To resolve the Total Liabilities without the need for additional litigation, the City agrees to resolve Total Liabilities, as referenced on Exhibits A through I, for a settlement amount of [$1,650,000.00 (Settlement Amount)], to be paid in quarterly installments beginning on or before September 3, 2019[,] with an initial payment in the amount of $412,500.00. The [ ] Agreement payments will be tendered as follows:

| [ ] DATES | AMOUNT [ ] |
|---|---|
| September 3, 2019 | $412,500.00 |
| January 2, 2020 | $176,785.71 |
| April 1, 2020 | $176,785.71 |
| July 1, 2020 | $176,785.71 |
| October 1, 2020 | $176,785.71 |
| January 4, 202[1] | $176,785.71 |
| April 1, 2021 | $176,785.71 |
| July 1, 2021 | $176,785.74 |
| TOTAL | 1,650,000.00 |

---

[1] Philadelphia, Pa., The Philadelphia Code (2020), *available at* https://codelibrary.amlegal.com/codes/philadelphia/latest/philadelphia_pa/0-0-0-266407 (last visited December 1, 2023).

Payments must be made by certified funds, made payable to the [City] and directed to the attention of Anthony P. Barreca [(Barreca)], Legal Assistant Supervisor, City [ ] Law Department . . . . Any payment not made timely will be subject to interest at the same rate as provided for business taxes by [Philadelphia Code] § 19-509(3)(a).[2]

. . . .

By [subsequent] agreement of the parties, the due date for the first payment of $412,500.00 was extended from September 3, 2019[,] to October 1, 2019. On that date, [ ] Gardiner delivered [two] certified checks to [ ] Barreca [totaling] $30,000.00.

The next day, October 2, 2019, those checks were returned to [ ] Gardiner, accompanied by a letter (Letter) signed by [Frances Beckley, Chief Counsel for the Department of Revenue (Beckley)].

The [L]etter states:

> Please find enclosed two checks totaling around $30,000[.00] from your client [ ] Gardiner that I am returning to you in order to avoid any misunderstanding. As you are aware, [ ] Gardiner entered into [the Agreement] with the [City] after which the City stayed all enforcement actions against him. Under that [A]greement[,] [ ] Gardiner's first down payment of [$412,500.00] was due September 3, 2019. Although that commitment was clear and a *quid pro quo* for the stay of enforcement, [ ] Gardiner claimed confusion, and the City agreed to extend the due date for that payment to October 1, 2019.
>
> Because your client is in breach of our [A]greement, the City intends to [file] *in personem* actions promptly against [ ] Gardiner, [Bizness] as Usual [Inc.,] and Biz as Usual [LLC]. The City also will proceed with all available enforcement action[s]—

---

[2] Section 19-509(3)(a) of the Phila. Code provides a method to calculate simple interest on all unpaid taxes except for delinquent real estate taxes. Phila. Code § 19-509(3)(a).

3

including, but not limited to, foreclosure, sequestration, water shut off[,] and denial of permits. No payment agreements will be available; payment in full will be the only way to stop enforcement.

[(Letter, Reproduced Record (R.R.) at 32a.[3])] Immediately thereafter, Bizness as Usual [Inc.], Biz as Usual [LLC][,] and [ ] Gardiner filed for Chapter 11 Bankruptcy on October 15, 2019. [ ] Gardiner testified that he then made payments through the [C]ity's electronic automatic payment system over the telephone, and at trial he claimed to have paid the City $540,000.00 toward his back taxes.[4] He also stated that he listed two properties for sale from which he thought he could raise another $500,000[.00,] that he would then pay toward his delinquent taxes at some point in the future.

(Trial Ct. Op. at 2-5) (citations and footnotes omitted).

[Landowners] initiated this action by filing a complaint on October 9, 2019, seeking [(]1) injunctive relief that would enjoin the [C]ity from selling any real property owned by [Landowners] at a tax sale or sheriff's sale[ ] pending the outcome of the action; and [(]2) [ ] a declaratory judgment that[,] based on the plain meaning of the [A]greement . . ., the only penalty for the failure to timely make a payment would

---

[3] Although Landowners' Reproduced Record is paginated using the format "R.__", we omit the "R." and refer only to the numeric designations followed by a small "a." *See* Pa.R.A.P. 2173.

[4] With regard to the amount paid by Landowners via the City's automated payment system, the trial court noted:

[Landowners] produced a schedule of payments at trial . . . . However, because [Landowners] did not produce this document to the City until the day before trial, counsel for the City was unable to confirm that the sum of $540,000.00 was received or how it was distributed to cover [Landowners'] indebtedness. Counsel for the City was able, at the [trial c]ourt's request, to account for the amount paid during a break in the trial. Counsel was able to account for payment of $250,000[.00] toward their indebtedness.

(Trial Court Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(a) Opinion (Trial Ct. Op.) at 5 n.3.)

4

be the imposition of interest[ ] and that the City is not to be permitted to schedule properties owned by [Landowners] for tax or [sheriff's] sale. . . . A non-jury trial was held before [the trial] [c]ourt on October 21, 2021. . . . [On December 9, 2021,] [the trial] [c]ourt issued its [decision] finding against [Landowners] and in favor of the City . . . .

(Trial Ct. Op. at 1-2) (citations omitted) (footnote in original).

In its December 9, 2021 decision, the trial court found that Landowners' failure to tender the initial payment due was a material breach that justified the City's termination of the Agreement. (December 9, 2021 Trial Ct. Op. ¶ 11.) The trial court rejected Landowners' argument that, because the Agreement did not expressly define "material breach," they could not be in default for failing to make the initial payment. *Id.* ¶ 12. The trial court also rejected Landowners' arguments that (1) the City was limited in remedy under the Agreement to recovering interest on untimely payments; and (2) the Agreement was modified by the City's receipt and acceptance of Landowners' tax payments made through the City's automated payment system. *Id.* ¶¶ 13-14. The trial court concluded that Landowners were liable to the City for the full amount of Landowners' Total Liabilities and, accordingly, denied Landowners' claims for injunctive and declaratory relief. *Id.* ¶ 15.

Landowners filed a motion for post-trial relief on December 17, 2021, and after oral argument on April 1, 2022, the trial court denied the motion by order filed April 4, 2022. Judgment was entered in favor of the City on April 5, 2022. Landowners timely appealed to this Court on April 14, 2022, after which both the trial court and Landowners complied with Pa.R.A.P. 1925.

## II.    ISSUES PRESENTED

Landowners raise a single overarching issue on appeal, namely, whether the trial court erred as a matter of law in concluding that their failure to pay in full the first installment payment due under the Agreement constituted a material breach

justifying the City's termination of the Agreement.[5]  In response, the City argues that Landowners' issues on appeal (1) lack merit; (2) are waived due to Landowners' failure to identify in their motion for post-trial relief the location in the record where the grounds for the sought relief were preserved;[6] and (3) are barred by *res judicata* and collateral estoppel.

### III.  **DISCUSSION**[7]

### A.  **Pa.R.Civ.P. 227.1/Res Judicata/Collateral Estoppel**

We preliminarily address the City's arguments that Landowners' issues on appeal are (1) waived and (2) barred by *res judicata* and/or collateral estoppel.  First, the City argues that all of Landowners' issues on appeal are waived because they did not, as required by Pa.R.Civ.P. 227.1(b)(2), include in their motion for post-trial relief[8]

---

[5] Although Landowners identified two additional issues in their Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal (Concise Statement), they have not pursued those issues in this appeal.  (Landowners' Br. at 11 n.3.)

[6] Pennsylvania Rule of Civil Procedure (Pa.R.Civ.P.) 227.1(b)(2) requires that a motion for post-trial relief specify all grounds for such relief and include a statement of how those grounds were asserted prior to or during trial.  Pa.R.Civ.P. 227.1(b)(2).  "Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds."  *Id.*

[7] "Our standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by [substantial] evidence, and whether an error of law was committed." *Swift v. Department of Transportation*, 937 A.2d 1162, 1167 n.5 (Pa. Cmwlth. 2007).  We may not reweigh the evidence or substitute our own judgment for that of the factfinder.  *Id.*  "[F]indings of the trial [court] in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent an error of law or abuse of discretion." *M&D Properties, Inc. v. Borough of Port Vue*, 893 A.2d 858, 861 n.4 (Pa. Cmwlth. 2006) (citation omitted).

[8] Landowners' motion for post-trial relief is not included in the Reproduced Record.  It is, however, included in the Original Record (O.R.) received from the trial court at document number (Doc. No.) 35.

6

a statement of how they asserted the grounds for relief identified therein prior to or during trial.[9]  We will not find waiver in this instance.

Rule 227.1(b)(2) requires that all asserted grounds for relief be identified in a motion for post-trial relief, together with a statement of how those grounds were asserted either before or during trial.  Pa.R.Civ.P. 227.1(b)(2).  Failure to so identify any grounds for relief will result in their waiver.  *Id.*; *Hinkson v. Pennsylvania Department of Transportation*, 871 A.2d 301, 303 (Pa. Cmwlth. 2005).  The official comment to Rule 227.1 provides, in pertinent part, as follows:

> [Subsection] (b) states two requirements for the granting of post-trial relief. First, the grounds for the relief requested must have been raised in pre-trial proceedings or at trial and, second, they must be stated in the motion. Under [Subsection] (b)(1), if no objection is made, error which could have been corrected in pre-trial proceedings, i.e., a ground for a new trial or a judgment notwithstanding the verdict, or during trial by timely objection, may not constitute a ground for post-trial relief. It must be raised timely in pre-trial proceedings or during the trial, thus affording the court the opportunity to correct the error.
>
> . . . .
>
> Under [Subsection] (b)(2), motions which set forth mere "boilerplate" language are specifically disapproved. Rather, the motion must state "the specific grounds therefor." A post-trial motion must set forth the theories in support thereof "so that the lower court will know what it is being asked to decide." *Frank v. Peckich*, 391 A.2d 624, 632-633 (Pa. Super. 1978).

Pa.R.Civ.P. 227.1, *Comment.*  The Explanatory Comment—1983 to the rule further explains:

---

[9] The City raised this issue before the trial court in its brief in opposition to Landowners' motion for post-trial relief. *See* City Brief in Opposition to Post-Trial Motions, O.R. Doc. No. 39.

[Rule 227.1(b)(2)'s] requirement that the motion state how the grounds were raised at trial indicates compliance with the requirements of [*Dilliplaine v. Lehigh Valley Trust Co.*, 322 A.2d 114 (Pa. 1974),] and [Subsection] (b)(1) that there be a timely objection in pre-trial proceedings or at the trial.

*Id.*, Explanatory Comment—1983. Subsection (b)(2)'s requirement that a party state how the asserted grounds for relief were raised either prior to or during trial serves to further the purpose of Rule 227.1, which is "to provide the trial court with an opportunity to correct errors in its ruling and avert the need for appellate review." *M.C. and E.K. Lees, Inc. v. Capenos*, 119 A.3d 1092, 1098 (Pa. Cmwlth. 2015) (quoting *Chalkey v. Roush*, 805 A.2d 491, 494 (Pa. 2002)). "[P]ost-trial motions are filed when the [trial] court still has jurisdiction to correct the asserted errors 'at that early stage without necessitating the expenditure of time and judicial energy in taking a costly appeal to the appellate courts.'" *Diener Brick Co. v. Mastro Masonry Contractor*, 885 A.2d 1034, 1039 (Pa. Super. 2005) (quoting *Diamond Reo Truck Co. v. Mid-Pacific Industries*, 806 A.2d 423, 428 (Pa. Super. 2002)).

In their motion for post-trial relief, Landowners raised five issues, each of which challenged a particular finding of fact or conclusion of law made by the trial court in its December 9, 2021 opinion. *See* Landowners' Post-Trial Motion, O.R. Doc. No. 35. Landowners did not expressly challenge any of the trial court's pre-trial or trial rulings. Their grounds for post-trial relief therefore *could not have been* asserted prior to the trial court's final decision. Any omission of how those grounds were raised prior to or during trial from Landowners' motion therefore did not, in this instance, deprive the trial court of the ability to address Landowners' issues prior to appeal. For

these reasons, we conclude that Landowners have not, by any failure to comply with Pa.R.Civ.P. 227.1(b)(2), waived any issues for appellate review.[10]

The City argues secondly that Landowners' claims are barred by *res judicata* and/or collateral estoppel because Bizness as Usual Inc. and Biz as Usual LLC previously were involved in two tax collection actions in the trial court presided over by a different judge. Bizness as Usual Inc. and Biz as Usual LLC apparently filed motions to stay execution in those cases, in which they argued that the collection actions were barred by the terms of the Agreement. The City argues that the trial court rejected that argument and denied the motions, which decision was not appealed. The City thus contends that the issues involved in this appeal, save one, previously were presented to and decided by the trial court, and accordingly cannot be relitigated here. We disagree.

Although the City alleges that it asserted the affirmative defenses of *res judicata* and collateral estoppel in the trial court, it does not identify where in the record those defenses appear. The City filed its answer to Landowners' complaint on March 1, 2021, which answer was not accompanied by new matter asserting any affirmative defenses. (O.R. Doc. No. 15.) The City thereafter, by leave of court, amended its answer to include, as new matter, the defenses of "breach of contract" and "*res judicata.*" (O.R. Doc. Nos. 27, 29.) However, the trial court ultimately issued its decision on the merits of Landowners' claims and made no findings or conclusions on the merits of the City's affirmative defenses. Additionally, although the City references at length the two related tax collection actions in the trial court, the issues and parties involved therein and their dispositions do not appear in the record before

---

[10] The trial court concluded that Landowners sufficiently identified the grounds for relief in their motion for post-trial relief. (Trial Ct. Op. at 6 n.4.)

9

us. We accordingly have nothing from the trial court to review in this respect, and we will not rule on the City's affirmative defenses in the first instance.

## B. Breach/Materiality

Landowners do not dispute that they paid less than 10% of the initial installment payment due on October 1, 2019 (after a one-month extension granted by the City). Rather, they argue that their failure to pay the entire amount due did not constitute a material breach of the Agreement that justified the City's termination of the Agreement. Landowners contend that their breach of the Agreement was not material because (1) the Agreement does not expressly make "time of the essence" regarding payments, and (2) the failure to make the first installment payment in full was not willful. (Landowners' Br. at 16-29.) Landowners further suggest that their subsequent payments made through the City's automated tax payment system rendered the City's termination of the Agreement "ambiguous" and unenforceable. The City argues in response that Landowners' interpretation of the Agreement would render it void for lack of consideration, that Landowners' failure to pay was a material breach because timely payment without the need for further litigation was the entire benefit of the City's bargain, and the Agreement was not subsequently ratified by the City via Landowners' automated tax payments.

It is axiomatic in Pennsylvania that questions involving the interpretation of a contract are questions of law for the Court, and not questions of fact. *Wert v. Manorcare of Carlisle PA, LLC*, 124 A.3d 1248, 1259 (Pa. 2015). A determination as to whether a contract's terms are ambiguous also is a question of law for the court. *Starling v. Lake Meade Property Owners Association, Inc.*, 162 A.3d 327, 346 (Pa. 2017). "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Insurance*

10

*Adjustment Bureau v. Allstate*, 905 A.2d 462, 468-69 (Pa. 2006). The "reasonably" qualifier is important: there is no ambiguity if one of the two proffered meanings is unreasonable. *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009).

"It is [also] well established that the intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Wert*, 124 A.3d at 1259.

> [W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence. Hence, where language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than as, perhaps, silently intended.

*Id.*

The Pennsylvania Superior Court has discussed at length the law governing whether a breach of contract is material:

> When performance of a duty under a contract is due, any nonperformance is a breach. If a breach constitutes a material failure of performance, then the non-breaching party is discharged from all liability under the contract. If, however, the breach is an immaterial failure of performance, and the contract was substantially performed, the contract remains effective. In other words, the non-breaching party does not have a right to suspend performance if the breach is not material.
>
> Whether a breach is so substantial as to justify an injured party's regarding the whole transaction as at an end is a question of degree; and it must be answered by weighing the consequences in the actual custom of men in the performance of contracts similar to the one that is involved in the specific

11

case. In determining materiality for purposes of breaching a contract, we consider the following factors:

> a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> b) the extent to which the injured party can be adequately compensated for that part of the benefit of which he will be deprived;
>
> c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

*Widmer Engineering Inc. v. Dufalla*, 837 A.2d 459, 467-68 (Pa. Super. 2003) (internal citations and quotations omitted).[11] *See also McCausland v. Wagner*, 78 A.3d 1093, 1101 (Pa. Super. 2013).

The trial court aptly analyzed the materiality of Landowners' breach. We quote its analysis at length:

> First, when [Landowners] agreed to pay $412,500.00 by October 1, 2019, and instead paid $30,000[.00], the City was significantly deprived of the benefit for which [it] had bargained. The entire benefit to the City conferred by this Agreement was that it would collect the delinquencies within eight [ ] months without the need for further litigation. Payment of the money itself was not consideration for the City—[Landowners] already owed these monies to the City by operation of law. Second, the City cannot be adequately compensated for its loss. Once [Landowners] failed to make the agreed[-]upon payments, the City lost the benefit of [its] bargain and was left to resort to litigation to collect the

---

[11] Although not binding, reported decisions of our sister appellate court may be cited for their persuasive value. *See In re Superior-Pacific Fund, Inc.*, 693 A.2d 248, 253 (Pa. Cmwlth. 1997).

12

amount owed. With regard to the third factor, [Landowners] will lose the discounted rate that the City previously agreed to[;] however, they are put back to their original status of indebtedness.

With regard to the fourth factor, "the likelihood that a party failing to perform will cure his failure," even considering the payments made by [Landowners] up until the time of trial in October 2021, [Landowners] fall drastically short of the $1,650,000[.00] that should have been paid in full by July 2021. [Landowners] have offered no concrete assurance of when or how they will complete the payments. [Landowners] have already disregarded all terms of the [Agreement], further lowering expectation that the terms would be completed in any timely fashion, if at all.

. . . .

When [a] "debtor gives nothing he was not already bound to give, and the creditor receives nothing [it] is not already entitled to receive, there is [therefore] no consideration.["] *PNC Bank,* [*National Association*] *v. Balsamo*, 634 A.2d 645, 655 (Pa. Super. 1993) [(citation omitted)]. . . . [Landowners'] consideration was the City's willingness to forgive nearly $650,000[.00] of what was already owed; the City's consideration was [the]pay[ ]off of this discounted amount in accordance with the schedule of payments [ ] to be completed by July[ ] 2021[,] without further litigation.

Finally, [Landowners] argue that the [ ] Agreement itself provides that [Landowners'] failure to pay $412,500.00 on October 1, 2019[,] did not constitute a material breach. Specifically, they argue [that] [a]ny payment not made timely will be subject to interest at the same rate as provided for business taxes by [Philadelphia Code §] 19-509(3)(a). According to [Landowners], this language absolves them from the promise to pay on time, and that if they failed to do so, the only remedy available to the City would be to collect interest on untimely payments. Under this interpretation, [Landowners] were free to breach the Agreement at any time without consequence, other than collection of interest on

13

some future, unpaid monies. This interpretation defies reason.

In weighing the above factors, it is clear that [Landowners'] breach was of a degree sufficient to allow the [Agreement] to be suspended. After negotiating and agreeing to the terms of the Agreement, and after obtaining an additional [(30)] days to make the first payment, [Landowners] still paid a small percentage of what was agreed upon [sic]. There were only two [] requirements for [Landowners]: [(]1) pay the installment amounts agreed upon [(]2) by certified check to [ ] Barreca. Failure to pay more than a fraction of [the] amount owed was a material breach justifying suspension of [performance] by the City. Once [Landowners] breached the Agreement, they were no longer entitled to the benefit of the deal struck with the City, and they are placed back into the position they were in prior to the Agreement. Even assuming, *arguendo*, that payments totaling $540,000[.00] were made at the time of the trial in October 2021 (which [Landowners] failed to prove), that sum is less than one third of the total amount of $1,650,000[.00] that should have been paid by July 1, 2021.

. . . .

[Landowners] argue that the failure of the City to include a clause that defines what constitutes a default and the resulting remedies precludes the City from [terminating the Agreement]. . . . [Landowners argue] that the Agreement not only contemplates, but actually *permits* late payments. . . . and subjects them to interest[,] but does not provide that the failure to make a full payment in accordance with the payment schedule constitutes a material breach or default. . . . The remedy for non-payment, according to this argument, is limited to payment of interest on some type of future payments. In other words, unless the City spelled out that failure to pay on time would constitute a default and/or time was of the essence, [Landowners] were free to disregard the payment schedule entirely and . . . effectively eliminate the essence of the City's part of the bargain. This is not a reasonable interpretation of the terms of this Agreement.

14

(Trial Ct. Op. at 7-12) (some internal citations and quotations omitted) (emphasis in original).

The trial court's analysis is on point and correct. The City forwent collection from Landowners of over $600,000.00 in liabilities to which it already was entitled by operation of law. In exchange, Landowners agreed, without further litigation, to make eight pre-scheduled payments in defined amounts, the first and largest of which constituted one-quarter of Landowners' entire negotiated liability. The form and location of the payments is specified in the Agreement, which requires that they be made in "certified funds" directly to the City's Law Department. Although the Agreement does not contain a provision making time of the essence, no such provision is required where the intent of the parties otherwise is clear that the timing of payments is material. *Bogojavlensky v. Logan*, 124 A.2d 412, 415 (Pa. Super. 1956). Here, the language of the Agreement and the circumstances it recites clearly indicate that the timing of the payments, each of which was given a specific date and amount, was material to the parties' bargain and constituted the entire consideration for the City's execution of the Agreement.

Moreover, and importantly, Landowners here did not merely make a late payment. After receiving an almost 30-day extension from the City, they paid approximately eight percent of the total amount due on October 1, 2019. Although technically timely, the payment was woefully inadequate, leaving from the get-go a past due amount of approximately $382,500.00. Landowners' breach thus went far beyond a timeliness issue and, as emphasized in the City's October 2, 2019 Letter, struck at the heart of the parties' bargain. The mere fact that the Agreement includes a term providing for the assessment of interest on *late* payments does not preclude a finding of material breach where Landowners fail to pay more than a trivial portion of

15

what is owed on any one payment. It is reasonable to interpret the Agreement's clear terms as providing that, where Landowners substantially comply with the payment terms in both timing and amount, any immaterial breach in either sense would not authorize the City's termination of the Agreement; the City nevertheless could assess interest on any smaller past due amounts caused by such a breach. However, where, as here, Landowners failed to substantially perform and paid only a trivial amount on the *first* payment due, their breach is material and justifies regarding the whole transaction as at an end. In that instance, the City need not resort to mere collection of interest; it may terminate and seek full payment of Landowners' Total Liabilities. The trial court found Landowners' breach to be material, and we discern no error or abuse of discretion in that finding.

Finally, we, like the trial court, reject Landowners' arguments that their subsequent payments through the City's automated tax payment system, which they contend were accepted by the City, both ratified the Agreement and proved that their failure to make the initial payment in full was not "willful."[12] (Landowners' Br. at 25-28.) First, in its October 2, 2019 Letter, the City unequivocally indicated its intent to terminate the Agreement based on Landowners' failure to make the initial payment due on October 1, 2019. Second, Landowners made all subsequent payments via the City's automated tax payment system. In light of the City's October 2, 2019 Letter, the City would have allocated the payments to Landowners' Total Liabilities and not their obligations under the Agreement, particularly since the payments were not made in certified funds to the City's Law Department as the Agreement required. Thus,

---

[12] We need not determine whether Landowners' breach was willful because we conclude that the clear terms and circumstances of the Agreement evidence the parties' intent that time (and substantial payment) were of the Agreement's essence. *Bogojavlensky*, 124 A.2d at 415; *Morrell v. Broadbent*, 140 A. 500 (Pa. 1928).

16

although Landowners will receive credit for whatever payments they made toward their Total Liabilities, such payments neither nullify nor render ambiguous the City's unequivocal termination of the Agreement on October 2, 2019.

## IV.  CONCLUSION

The trial court did not err or abuse its discretion in concluding that Landowners materially breached the Agreement, entitling the City to suspend its own performance and terminate the Agreement.  The trial court therefore did not err or abuse its discretion in entering judgment in favor of the City on all claims asserted in Landowners' complaint.  The judgment of the trial court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Antoine Gardiner, Bizness       :
as Usual Inc., Biz as Usual LLC,     :
and King Kole Cafe Inc.,          :    No.   382 C.D. 2022
            Appellants       :
          v.               :
                           :
City of Philadelphia           :

## ***ORDER***

AND NOW, this 4th day of December, 2023, the April 5, 2022 judgment of the Court of Common Pleas of Philadelphia County hereby is AFFIRMED.

 

 

_____
PATRICIA A. McCULLOUGH, Judge