J-A08033-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| XIANG (SEAN) YUAN, M.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| POSITIVE PHYSICIANS INSURANCE | : | No. 1821 EDA 2025 |
| COMPANY | : | |

Appeal from the Order Entered June 24, 2025
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 231101700

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and KING, J.

MEMORANDUM BY LAZARUS, P.J.:                     **FILED MAY 29, 2026**

Xiang (Sean) Yuan, M.D. ("Dr. Yuan") appeals from the order entered on June 24, 2025, granting Positive Physicians Insurance Company's ("PPIC") motion for summary judgment. Dr. Yuan claims the court erred in granting summary judgment. After careful review, we affirm.[1]

The underlying claims herein began after Dr. Yuan was hired to perform liposuction surgery on Sheila Tobin on October 19, 2019. Tobin later claimed Dr. Yuan permitted an unlicensed, former podiatrist, Steven Neilson, to perform the liposuction surgery that then caused serious, severe, and protracted injuries. Tobin did not file her lawsuit against Dr. Yuan until October

_____

[1] Based on our disposition, Appellee's Application to Quash/Dismiss Appeal and Strike Appellant's Brief, filed on October 8, 2025, is denied as moot.

19, 2021. In between these dates, Dr. Yuan sought renewals of his malpractice insurance from PPIC. Furthermore, between October 2019 and October 2021, Dr. Yuan was charged with 36 criminal offenses, and his medical license was suspended due to his treatment of Tobin. The following dates are significant:

On June 20, 2020, Dr. Yuan signed an application for insurance renewal that asked, in relevant part: "[d]o you know of any circumstance, act, error or omission that could possibly result in a professional liability claim against you?[;]" "[h]as your professional license ever been denied, suspended, revoked or voluntarily surrendered or has probation been invoked?[;]" and "[h]ave you ever been charged with a criminal offense or are you currently under investigation for a criminal act?" To all three of these questions, Dr. Yuan answered by checking a box indicating his answer was "no." Positive Physicians Insurance Company Physician Professional Liability Renewal Application, 6/20/2020, at 1, 5 (pagination added for ease of reference). Prior to Dr. Yuan's signature, this application stated:

> I hereby declare that the above statements and particulars, or any statements and particulars made in any and all documents, applications, supplemental pages or other attachments (hereinafter "attachments") for the purposes of my initial or renewal application, are true and that I have not knowingly suppressed or misstated any material facts and I agree to notify the Positive Physicians Insurance Company (hereinafter "Positive Physicians") if there are any future material changes in any answer to this application, or its attachments, including without limitation, any change in my professional specialty, affiliation or working arrangement with any other dentist, physician, firm or professional association.

*Id.*at 5 (pagination added for ease of reference).

- 2 -

Two days later, on June 22, 2020, Dr. Yuan was charged with 36 criminal offenses. According to the public docket sheet, Dr. Yuan posted bail on June 23, 2020. Nine days after Dr. Yuan signed his application, "three persons came [to his] office and took [his] license." N.T. Deposition of Dr. Yuan, 2/6/25, at 23. Dr. Yuan's Pennsylvania medical license was suspended for approximately three months.

Dr. Yuan did not notify PPIC of the criminal charges or license suspension.

On May 20, 2021, Dr. Yuan again sought renewal of his insurance policy with PPIC. This application did not ask specific questions about Dr. Yuan's medical license, nor did it ask if he was charged with any criminal offenses. However, this application did ask "[h]ave you been involved in a NEW malpractice claim/suit/incident in the past year or have any pending claims been resolved?" Renewal Application Physician/Ancillary Employee Professional Liability, 5/20/21, at 1 (emphasis in original). Dr. Yuan answered "no." Further, this application noted, prior to Dr. Yuan's signature:

> I do hereby warrant the truth of any statements and answers mentioned herein, and that I have not intentionally withheld any information that could influence the judgement of the company in considering this application for professional liability insurance. I hereby acknowledge that I have completed the required reporting of claims and incidents to my current carrier. Erroneous information and/or material misrepresentation will cause immediate rescission of my insurance coverage.

*Id.* at 3.

Dr. Yuan again did not notify PPIC of his license suspension (although it was reinstated by this date) or the pending criminal charges (not yet resolved). As noted above, Dr. Yuan was sued by Tobin on October 19, 2021. Dr. Yuan provided this lawsuit to PPIC but still did not notify PPIC of his license suspension or pending criminal charges. On November 9, 2021, PPIC informed Dr. Yuan that it was rescinding the policy based upon Dr. Yuan's failure to inform PPIC of the pending criminal charges and license suspension.

On October 28, 2022, Dr. Yuan pled guilty to theft by deception and conspiracy.[2] On February 9, 2023, Dr. Yuan entered into a consent agreement with the Pennsylvania State Board of Medicine regarding his license. Dr. Yuan agreed that he violated the Medical Practice Act and that his license was placed on suspension, however, that suspension was stayed in favor of placing his license on probationary status for three years.

On November 14, 2023, Dr. Yuan filed the underlying motion for declaratory judgment seeking an order stating that PPIC has a duty to defend Dr. Yuan in the action filed by Tobin. PPIC filed its answer with new matter on January 9, 2024. After further proceedings and discovery, PPIC filed for summary judgment on March 17, 2025. The court granted PPIC's motion for summary judgment on June 24, 2025. Dr. Yuan appealed and complied with the trial court's order to file a Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b).

_____

[2] 18 Pa.C.S.A. §§ 3922(a)(1) and 903(a)(1), respectively.

The trial court authored its Rule 1925(a) opinion on August 15, 2025. *See* Pa.R.A.P. 1925(a).

Dr. Yuan raises numerous questions for our review, however, the claims can all be boiled down to whether the trial court erred in granting summary judgment in favor of PPIC. *See* Appellant's Brief, at 9-10.

Before we can address Dr. Yuan's argument, however, we must address PPIC's request to quash Dr. Yuan's appeal or, alternatively, to strike Dr. Yuan's brief. *See* Application to Quash Appeal, 10/8/25, at 4-12; Appellee's Brief, at 32-36. PPIC asserts Dr. Yuan failed to comply with our rules by relying upon evidence outside the certified record, failing to submit and provide an entire reproduced record, failing to provide a procedural and factual history of the case with citations to rulings below and the record, and by presenting nine separate questions presented that do not include corresponding argument sections. *See id.*

While PPIC is technically correct that this Court may quash an appeal for failure to comply with our rules, this Court often takes the approach that if we are able to discern an appellant's arguments, we will consider the merits thereof. *See Verdini v. First Nat. Bank of Pennsylvania*, 135 A.3d 616, 618 n.2 (Pa. Super. 2016). Further,

> [i]t is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in this case. Any document which is not part of the official certified record is considered to be nonexistent, which deficiency may not be remedied by inclusion in the reproduced record.

***Brandon v. Ryder Truck Rental, Inc.***, 34 A.3d 104, 106 n.1 (Pa. Super. 2011) (quotation marks and citations omitted).

We are able to discern Dr. Yuan's argument regarding matters that are of record. We therefore decline to quash the appeal and will review Dr. Yuan's assertion that the trial court erred in granting summary judgment, but we will not consider any evidence outside of the certified record.

We begin with our well-established standard and scope of review:

> In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court. An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

> Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prime facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

***Id.*** at 107-08 (ellipsis and citation omitted).

Dr. Yuan first argues that the trial court erred in accepting the allegations made in the Tobin complaint as true. ***See*** Appellant's Brief, at 21. According to Dr. Yuan, by accepting those allegations as true, the court erred in finding that he made material misrepresentations, thereby allowing PPIC to

rescind its insurance policy. *See id.* at 27. Furthermore, Dr. Yuan focuses solely on the language and timing of the renewal applications in both 2020 and 2021 and asserts he was truthful in all of his answers to the applications. *See id.* at 34. Because his answers to the specific questions were truthful at the time he made them, he asserts the court erred in finding he made material misrepresentations regarding the criminal charges and suspension of his license. *See id.* Finally, Dr. Yuan claims that the clauses in the applications requiring him to notify PPIC of any changes were inconspicuous and ambiguous and therefore he cannot be found to have made a material misrepresentation by violating those clauses. *See id.* at 49-50.

PPIC responds that Dr. Yuan had a duty of good faith and was obligated to inform them of any changes to the questions of the original and all renewal applications, or anything that is material to their issuance of the insurance policy. *See* Appellee's Brief, at 47. Furthermore, PPIC claims that Dr. Yuan was required to notify them of the factual underpinnings of Tobin's allegations because he knew or should have known that his action or inaction in her surgery caused her harm and was likely to result in a malpractice action. *See id.* at 51-52. Finally, PPIC argues Dr. Yuan had a continuing duty to supplement his answers to the renewal applications and did not do so, even though his answers changed mere days after he signed the 2020 renewal application. *See id.* at 53-54. We agree with PPIC.

Our Pennsylvania Supreme Court has outlined the standard regarding a

material misrepresentation when obtaining an insurance policy:

> When an insured secures an insurance policy by means of fraudulent misrepresentations, the insurer may avoid that policy. The burden of proving fraud must be established by clear and convincing evidence and rests with the party alleging it. The clear and convincing standard requires evidence that is so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts of the issue. This court has previously observed that fraud is never proclaimed from the housetops nor is it done otherwise than surreptitiously with every effort usually made to conceal the truth of what is being done. So fraud can rarely if ever be shown by direct proof. It must necessarily be largely inferred from the surrounding circumstances.
>
> In an insurance fraud case, the insurer must prove that the fraudulent misrepresentations were material to the risk assumed by the insurer. When knowledge or ignorance of certain information would influence the decision of an insurer in the issuance of a policy, assessing the nature of the risk, or setting premium rates, that information is deemed material to the risk assumed by the insurer. Furthermore, fraud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth or look or gesture. That is, there must be a deliberate intent to deceive. Finally, the concealment of a material fact can amount to a culpable misrepresentation no less than does an intentional false statement.

**_Rohm and Haas Co. v. Continental Cas. Co._**, 781 A.2d 1172, 1179 (Pa.

2001) (citations and quotation marks omitted).

Furthermore, this Court has uniformly held:

> [t]he interpretation of an insurance contract is a matter of law for the court. The primary objective of contract interpretation is to ascertain and effectuate the intent of the parties as it is reasonably manifested by the language of their written contract. The words of an insurance policy which are unambiguous should be

- 8 -

construed according to their plain and ordinary meaning. The court must assess the writing as a whole, and not in discrete units, when determining whether a writing is ambiguously drafted. A contract term or provision may properly be deemed ambiguous if reasonable minds can differ as to its meaning. While the court will not allow an overly-subtle or technical interpretation to defeat the reasonable expectations of the insured, it will not convolute the plain meaning of a writing merely to find an ambiguity.

*O'Brien Energy Systems, Inc. v. American Employers' Ins. Co.*, 629 A.2d 957, 960 (Pa. Super. 1993) (citations omitted). Finally, we note that "an application is an integral part of a policy, and the questions and answers contained therein are material to the risks which both the company and the insured assume." *Egger v. Gulf Ins. Co.*, 864 A.2d 1234, 1245 (Pa. Super. 2004) (brackets, internal quotation marks, and citation omitted).

Here, Dr. Yuan signed an application for renewal of his insurance policy with PPIC on June 20, 2020. Two days later, he was charged criminally with 36 counts. Dr. Yuan did not notify PPIC of these charges, even though, two days before the charges, he answered "no" to the question "[h]ave you ever been charged with a criminal offense or are you currently under investigation for a criminal act?" Positive Physicians Insurance Company Physician Professional Liability Renewal Application, 6/20/20, at 5 (pagination added for ease of reference). Dr. Yuan posted bail on June 23, 2020, three days after answering "no," he has not been charged with a criminal offense. *See* Magisterial District Docket, MJ-38203-CR-0000176-2020, at 2. Dr. Yuan still did not notify PPIC of these pending charges.

Moreover, nine days after signing the application wherein he answered "no" to the question "[h]as your professional license ever been denied, suspended, revoked or voluntarily surrendered or has probation been invoked?" his license was physically taken from him and placed on suspension. Positive Physicians Insurance Company Physician Professional Liability Renewal Application, 6/20/20, at 5 (pagination added for ease of reference). Dr. Yuan testified at his deposition that he received the application, filled it out, and signed it. *See* N.T. Deposition of Dr. Yuan, 2/6/25, at 31-44. Dr. Yuan further testified that "three persons came [to his] office and took [his] license." *Id.* at 23. Even though three people came, in person, to his office and physically took his license to practice medicine from him, he did not inform PPIC that his answers to these questions had changed.

When confronted with the language of the policy requiring him to provide updates to any of the questions asked on this application, Dr. Yuan called it a "trap" and that he did not know he needed to update PPIC that his license was suspended and he was facing 36 counts of criminal offenses. *See Id.* at 37, 43-44. As the United States Supreme Court aptly declared:

> For even the most unsophisticated person must know that, in answering the questionnaire and submitting it to the insurer, he is furnishing data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure.

***Stipcich v. Metropolitan Life Ins. Co.***, 277 U.S. 311, 316-17 (1928) (footnote omitted). The same applies herein. Dr. Yuan should have known, two days and nine days after he signed his application, that the significant changes in his answers were material and must be updated.

Furthermore, the application required Dr. Yuan to provide these updates. Dr. Yuan attempts to claim he was not bound by the language in the renewal application because it was inconspicuous and ambiguous. ***See*** Appellant's Brief, at 49-50. We disagree. The language is clearly written, in the same size font as the questions and answers, and is not ambiguous. Dr. Yuan had a duty to update PPIC with "any future material changes to any answer to this application, or its attachments, including without limitation, any change in [his] professional specialty, affiliation or working arrangement with any other dentist, physician, form or professional association." Positive Physicians Insurance Company Physician Professional Liability Renewal Application, 6/20/2020, at 5 (pagination added for ease of reference). "[I]ncluding without limitation" is clear: Dr. Yuan must notify PPIC of any changes to his answer to these questions, that includes "any change in [his] professional specialty, affiliation, or working arrangement with any other dentist, physician, form or professional association[,]" but is not limited to only those matters.

Our Pennsylvania Supreme Court has continued to emphasize that "[a] party will be bound by [a signed contract] regardless of whether he or she

read and fully understood its terms." ***Wert v. Manorcare of Carlisle PA, LLC***, 124 A.3d 1248, 1259 (Pa. 2015) (citation omitted). Dr. Yuan is bound by the language of the renewal application that he signed, which stated that he would update PPIC of any changes to his answers. We therefore hold that Dr. Yuan had a continuing duty to disclose this information to PPIC. As he never informed PPIC that his license was suspended and he had pending criminal charges, we find the trial court did not err in holding Dr. Yuan made material misrepresentations by concealing these facts from PPIC.

However, not only did Dr. Yuan not disclose this information after he was arrested and his license was physically taken from him, he also did not disclose this information on his renewal application in 2021. Dr. Yuan asserts he did not need to disclose this information on the 2021 renewal application because he was not specifically asked. We find the language of the renewal application disputes his proposition. As noted above, the language provides "I have not withheld ***any*** information that could influence the judgement of the company in considering this application for professional liability insurance." Renewal Application Physician/Ancillary Employee Professional Liability, 5/20/21, at 3 (emphasis added). It is glaringly obvious that the suspension of one's license to practice medicine is a factor that would influence the issuance of medical malpractice insurance. Also, criminal charges relating to the treatment of a former patient would materially alter the company's decision of whether to issue a policy. Dr. Yuan was required, as soon as he knew of the

charges and license suspension, to inform PPIC of such. He was further required to inform PPIC on his subsequent renewal application. He failed to do so, and his inaction was a material misrepresentation that permitted PPIC to rescind its policy. The trial court therefore did not err in granting summary judgment.

Order affirmed.

Judgment Entered.



Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/29/2026